IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

SEBRON FLOYD,           )
                        )
Plaintiff,              )
                        )
v.                      )          20-CV-4202
                        )
ASHLEY ADWELL,          )
                        )
Defendant.              )

## ORDER

Plaintiff brought this suit pursuant to 42 U.S.C. § 1983 alleging a claim for First Amendment retaliation. Specifically, Plaintiff alleges Adwell falsely claimed that Plaintiff threatened a staff member in retaliation for Plaintiff's grievances against Adwell regarding Adwell's performance as dietary manager, resulting in Plaintiff being placed on movement restrictions.

Plaintiff's Motion for Reconsideration Regarding Appointment of Counsel (#38) and Defendants' Motion for Summary Judgment (#29) are before the Court.

## I. MOTION FOR APPOINTMENT OF COUNSEL

The Court undertakes an initial two-part inquiry: (1) whether the plaintiff made a reasonable attempt to obtain counsel or has

been effectively precluded from doing so, and, if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it themselves. *Watts v. Kidman*, 42 F.4th 755, 760 (7th Cir. 2022), citing *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir 2007).

The second step can be difficult. The court must consider the factual and legal difficulty of a plaintiff's claims, and the plaintiff's competence to litigate them, while accounting for the plaintiff's literacy, communication skills, educational level, and litigation experience, plus the plaintiff's intellectual capacity and psychological history if information on those topics is before the court. *Watts*, 42 F.4th at 760. After this analysis, the court is "permitted to consider the strength or weakness of a plaintiff's claim," and "the recruitment of counsel is unwarranted if the plaintiff's 'chances of success are extremely slim.'" *Id.* at 766. However, the court's assessment of the merits of a given case must account for the pro se litigant's likely difficulty in articulating their claim effectively. *Id.*

> "[L]egal time is scarce," and "[w]hen we compel a judge to divert the resources of the bar to weak claims ... we reduce the likelihood that other persons will receive adequate legal assistance." *Eagan v. Dempsey*, 987 F.3d 667, 699–700 (7th Cir. 2021) (Easterbrook, J., dissenting in part). And even when

2

pro bono attorney resources are devoted to litigating meritorious pro se claims, the ask from the court is significant: "[e]ven with donated lawyer time and talent," the out-of-pocket costs involved in necessary tasks such as taking depositions and procuring expert testimony can "easily surpass" the plaintiff's realistic prospect for damages. *McCaa I*, 893 F.3d at 1036 (Hamilton, J., concurring); see also *Cole*, 265 F. Supp. 3d at 901 (Griesbach, J.) (explaining that, for certain types of cases, "[t]he time and money it would take to represent a plaintiff ... is beyond what courts can reasonably expect a law firm to expend without any hope of recovery"). As such, we wholly agree with Judge Griesbach's observation that the reasonable course of action is for district courts to engage in "closer scrutiny ... of the merits and what is at stake in a case before a judge uses [their] office to recruit a 'volunteer' attorney to represent the plaintiff." *Cole*, 265 F. Supp. 3d at 900.

*Watts*, 42 F.4th at 763–64.

Here, Plaintiff has demonstrated an adequate effort to obtain counsel on his own, but he has been unsuccessful. Plaintiff appears to assert that the letter he attached to his original Motion for Appointment of Counsel (#14), or perhaps Judge Shanzle-Haskins' Text Order of January 14, 2021, indicated an attorney was available to be appointed. The Court cannot agree. Judge Shanzle-Haskins was clear that the Court would not order a volunteer attorney for Plaintiff, and the letter attached to Plaintiff's original motion says that the attorney is unable to take Plaintiff's case.

The Court now turns to whether appointment of counsel is appropriate here. While all federal lawsuits have some level of complexity, the factual difficulty of Plaintiff's claim is relatively easy. Plaintiff asserts he filed grievance about dietary, and that fact has been proved. Plaintiff asserts he was disciplined based on a report by Defendant, and that too has been proved. The factual issue is whether Plaintiff has proof that his grievances caused Defendant's report. That proof is lacking, but the Court does not see how the appointment of an attorney would greatly help in developing that point. The legal difficulty of this case is, again, relatively straightforward.

Aside from the general difficulty of engaging in litigation from detention, Plaintiff does not identify any communication issues, lack of education, lack of literacy, or mental issues that interfere with his ability to represent himself.

Therefore, the Court finds Plaintiff competent to litigate this case himself. His Motion for Appointment of Counsel (#38) is denied.

## II. MOTION FOR SUMMARY JUDGMENT

A. <u>Facts</u>

These facts are set forth for purposes of this Order only. The Court has reviewed the parties' pleadings and supporting documentation and states only those facts it finds to be material and not subject to any legitimate dispute.

<u>The Parties</u>

Plaintiff has been detained at the TDF since 2006, where he was transferred following completion of a sentence in the IDOC.

Defendant Adwell was the Food Service Supervisor employed by Aramark Correctional Services, LLC, at Rushville Treatment and Detention Facility, at the time of the incidents alleged in Plaintiff's Complaint. From January through April 2019, she was Food Service Manager and acting Food Service Director, and, since April 2019, she has been the Food Service Director. Aramark is a private company under contract to provide food and sanitation services to TDF detainees under the auspices, direction, and control of the Illinois Department of Human Services. Aramark is not a Defendant.

<u>Plaintiff's Complaints about Adwell's Performance</u>

On November 22, 2019, Plaintiff completed an "Attempt to Resolve" complaining that he was served the same meal each day on November 13, 14, 15, and 16. (#29-4) at 2-3. Plaintiff wrote that he asked to speak to Defendant about the issue on November 20, but Defendant told security she would not speak to Plaintiff. The staff response to this grievance was, "Dietary manager contacted who states this issue was never brought to her attention. She states resident is on a no turkey diet and has a diet load sheet that they follow." *Id.*

On November 27, 2019, Plaintiff filed another Attempt to Resolve, complaining that Defendant does not provide detainees who have elected to receive kosher meals the same special meals and snacks she provides to non-kosher detainees. The staff response was, "dietary manager contacted who states they must follow kosher guidelines. Also, koshers receive a special/different meal every day." (#29-4) at 5-6.

<u>Adwell's Allegations Against Plaintiff</u>

Adwell states:

On March 26, 2020, at approximately 12:40 p.m., I became aware that Plaintiff threatened to meet kitchen staff "outside" in 30 days and "kick" the kitchen staff's "ass." As a result, pursuant to the policies and practices that are in place in the kitchen at Rushville and the Rushville facility, I reported the aforementioned incident to appropriate personnel employed by Rushville.

Adwell Affidavit (#29-1) at ¶ 13.

<u>TDF Behavioral Committee</u>

The TDF has a Behavioral Committee. TDF Handbook (#29-3) at 60. A detainee may be called before the Behavioral Committee if it appears the detainee has violated TDF rules. The Behavioral Committee is made up of (1) the Associate Clinical Director or the Clinical Director of the TDF, (2) a Security Therapy Aid IV (Shift Commander); and (3) the detainee's Treatment Team Leader or another Team Leader.

"Escort Service" at the TDF means that due to security concerns or clinical reasons security staff escorts a detainee when he leaves his residential unit. (#29-3) at 22.

Defendant Adwell states that it is her understanding that members of the Behavioral Committee, Risk Assessment Team, and

TDF security personnel make the decisions as to whether a detainee is placed on and remains on escort status. Adwell is not a member of the Behavioral Committee, Risk Assessment Team, or TDF security personnel. She did not participate in any decisions of any of those groups or any other groups to place or retain Plaintiff on escort service status. Adwell Declaration (#29-1).

Plaintiff agrees that the Risk Assessment Team decides placement on and removal from escort status. (#29-2) at 16 (deposition page 57). Plaintiff agrees Adwell did not attend the Behavioral Committee meeting regarding Adwell's allegations against Plaintiff. *Id.* at 14 (deposition page 48).

Plaintiff Raises Retaliation Allegations against Adwell

On April 6, 2020, Plaintiff learned he had been placed on escort service. (#29-4) at 8-11. On April 12, Plaintiff wrote an Attempt to Resolve. Plaintiff asserted that security STA II Morton told him that a person named Nadler had written something up stating Plaintiff had threatened her. Plaintiff wrote that he had never spoken to Nadler, so she must be lying. Plaintiff wrote that Defendant was mad because Plaintiff had written her up in the past, and that Defendant was retaliating against Plaintiff for writing

8

her up. *Id.* Plaintiff wrote that if he ever threatens someone he follows through on the threat, that he never speaks to Aramark staff, and that Nadler had never done anything to him, so he would have had no reason to threaten her. *Id.* Plaintiff also asked why he was not written up if he had made the alleged threat. The staff response says, "security personnel and dietary department notified of resident's complaint. It was reported that resident was placed on escort status due to making a threatening statement toward staff. Resident's treatment team also notified." *Id.*

<u>Behavioral Committee Proceedings</u>

On April 14, Plaintiff received a notice to appear before a meeting of the Behavioral Committee the following day, to review the alleged incident on March 26 at approximately 12:40 p.m. where Plaintiff "threatened to meet Staff outside in 30 days and kick Staff's ass." (#29-5) at 2.

On April 15, Plaintiff attended the Behavioral Committee's meeting. He explained that his roommate had complained to Plaintiff about being verbally abused by Nadler in dietary. Plaintiff told his roommate he would talk to Defendant about the situation. Plaintiff went and talked to Defendant and asked Defendant to talk

9

to Nadler and tell Nadler to stop verbally abusing Plaintiff's roommate. (#29-2) at 14 (deposition page 46-48). Defendant told Plaintiff she did not think Nadler was mistreating Plaintiff's roommate. *Id.* Plaintiff's roommate worked in dietary at the time. *Id.* 13 (deposition page 42). The Behavioral Committee's Initial Meeting document indicates the Committee found Plaintiff had committed the minor violation of insolence, rather than the charged major violation of a staff threat. (#29-5) at 5.

On April 29, Plaintiff filed another Attempt to Resolve asking to be removed from escort and to have his food trays delivered so he could avoid any contact with Aramark staff. The staff response states, "Security staff contacted who spoke with resident and resolved this issue. Resident and staff alike agreed that his meal trays will be delivered again along with the rest of the Kosher meals." *Id.*

B. Summary Judgment Analysis

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In

10

ruling on a motion for summary judgment, a district court "has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). In making this determination, the court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Singer v. Raemisch*, 593 F.3d 529, 533 (7th Cir. 2010).

To make out a prima facie case of First Amendment retaliation, a plaintiff must establish that (1) he engaged in activity protected by the First Amendment, (2) he suffered a deprivation that would likely deter First Amendment activity in the future, and (3) the First Amendment activity was "at least a motivating factor" in the defendants' decision to take the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). "Once a defendant produces evidence that the same decision would have been made in the absence of the protected speech, the burden shifts back to the plaintiff to demonstrate that the proffered reason was pretextual and that the real reason was retaliatory animus." *Thayer v.*

11

*Chiczewski*, 705 F.3d 237, 252 (7th Cir. 2012). "At the summary judgment stage, this means a plaintiff must produce evidence upon which a rational finder of fact could infer that the defendant's proffered reason is a lie." *Thayer v. Chiczewski*, 705 F.3d 237, 252 (7th Cir. 2012), quoting *Zellner v. Herrick*, 639 F.3d 371, 379 (7th Cir. 2011).

Plaintiff alleges that Defendant made up a lie in March 2020 about Plaintiff threatening a staff member. Plaintiff asserts Defendant made up this lie because of Plaintiff's November 2019 complaints about how Defendant operated various aspects of foodservice operations.

The Court finds that Plaintiff's filing of Attempts to Resolve in November 2019 was protected activity. *Dobbey v. IDOC*, 574 F.3d 443, 446 (7th Cir. 2009).

Whether the deprivation Plaintiff suffered – escort service and being found guilty of a minor violation of insolence – was sufficiently serious to deter future protected activity presents a closer call. *See Thomas v. Anderson*, 912 F.3d 971, 974 (7th Cir. 2018) (false disciplinary charge leading to a month in segregation and three months restrictive confinement sufficiently serious), *but*

12

*see Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009) (single retaliatory charge later dismissed insufficiently serious deprivation).

Here, although it is close, the Court finds that if Defendant made the disciplinary report against Plaintiff because of his protected activity, the disciplinary infraction he was convicted of was sufficiently serious to deter a person of ordinary firmness from future protected activity.

Finally, the Court must assess whether a triable issue exists regarding causation. The question is whether Plaintiff's protected activity – filing grievances in November 2019 – caused the actions taken against him in April 2020. Here Plaintiff's claim stumbles. There is simply no evidence in the summary judgment record to show that Plaintiff's dietary complaints in November 2019 had anything to do with the situation that developed at the end of March, and into April, 2020. "Suspicious timing may be just that— suspicious—and a suspicion is not enough to get past a motion for summary judgment." *Loudermilk v. Best Pallet Co., LLC*, 636 F.3d 312, 315 (7th Cir. 2011). Plaintiff's suspicion that his months-earlier dietary complaints caused Defendant to file a false

disciplinary report is insufficient to create a triable issue here.

Summary judgment is granted for Defendant.

**IT IS THEREFORE ORDERED:**

1) **Plaintiff's Motion for Counsel [38] is DENIED.**

2) **Defendants' Motion for Summary Judgment [29] is GRANTED. The Clerk is directed to enter judgment in favor of Defendants and against Plaintiff.**

3) **Plaintiff's Motion to Receive Filings by Mail [41] is DENIED and his Motion for Status [42] is MOOT.**

4) **If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal in forma pauperis MUST identify the issues Plaintiff wishes to present on appeal, to assist the Court in determining whether the appeal is taken in good faith. *See* Fed. R. App. P. 24(a)(1)(c); *see also Celske v Edwards*, 164 F.3d 396, 398 (7th Cir. 1999)(an appellant should be given an opportunity to submit a statement of his grounds for appealing so that the district judge "can make a reasonable assessment of the issue of good faith."); *Walker v. O'Brien*, 216 F.3d 626, 632 (7th Cir. 2000)(providing that a good faith appeal is an appeal that "a reasonable person could suppose...has some merit" from a legal perspective). If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee regardless of the outcome of the appeal.**

ENTERED: March 20, 2023.

<u>**s/ Sue E. Myerscough**</u>
SUE E. MYERSCOUGH
SENIOR U.S. DISTRICT JUDGE